# Appeals of T. W. Montgomery, George A. Port, Isenberg & Maguire, J. March, Philadelphia Clothing House, Henry & Company.

Where a custom is established by a manufacturing firm of issuing assignable certificates to its laborers of the amounts due them, which were assigned to merchants in payment for goods purchased by them, for which the firm gave their negotiable notes to the merchants; such notes so given are a release of the preferred lien of the labor claims upon the property of the firm on its insolvency.

The court must judge of the materiality of the disputed fact before granting an issue to try it.

The court is not required to grant an issue if the record shows that it must necessarily prove unavailing; nor can it grant an issue to decide a question of law.

(Decided October 4, 1886.)

Appeals from a decree of the Common Pleas of Huntingdon County in the distribution of the proceeds of the sheriff's sale of personal property. Affirmed.

The funds in question arose from the sale under execution on a judgment entered on warrant of attorney given to the Union Bank of Huntingdon, by Blain Brothers, for $50,000. Before the sale, laborers in the employ of Blain Brothers, and holders of assigned labor claims, gave notice to the sheriff under the acts of assembly giving them preference in the distribution of the funds. These notices were deemed sufficient in law, and in pursuance of the agreement between attorneys and parties interested, the sheriff paid out $22,607.83 of the proceeds of the sale. After deducting the amount paid out by the sher-

Cited in Moore v. Dunn, 10 Pa. Co. Ct. 79, 48 Phila. Leg. Int. 116, 28 W. N. C. 63; Duffy v. Duffy, 6 Pa. Co. Ct. 161; Poley v. Lally, 5 Kulp, 201; Dunn's Appeal, 147 Pa. 364, 23 Atl. 596.

NOTE.—Feigned issues are to be granted only to try definite disputes as to fact, and not questions of law, or questions of law and fact. Landis v. Lyon, 71 Pa. 473. And the question submitted must conform to the pleadings. Knowles v. Jacobs, 4 Pa. Super. Ct. 268.

iff there was left in his hands a balance of $23,361.48, and an auditor was appointed to distribute this balance among other claimants. The auditor distributed the funds, first, to the laborers having claims for wages and the holders of assigned labor claims; second, to the Union Bank of Huntingdon. Seven of the claimants holding notes made by Blain Brothers, which were taken in exchange for assigned labor claims, filed exceptions to the auditor's report and presented their petitions to the court for an issue to determine disputed facts. After argument on such exceptions and petitions the court, FURST, P. J., delivered the following opinion:

"The issues requested in all said petitions are substantially as follows:

"First. Whether the labor claims or wages which were assigned to the petitioners and surrendered to the said Blain Brothers, and the accommodation notes that were taken by the petitioners, were a release of the preferred liens that the petitioners had on the property of Blain Brothers, and the fund realized from the sale thereof by the sheriff, under the act of April 9, 1872, and its supplements.

"Second. Whether the accommodation notes, given by Blain Brothers to the petitioners for the amount of labor claims and wages which had been assigned to them, were given and accepted by the petitioners in payment and full satisfaction of said assignor's wages, and in discharge of the liens and rights of preference upon, in, and to said fund under act of April 9, 1872, and its supplements.

"These several applicants for issues, above stated, are merchants holding the negotiable notes of Messrs. Blain Brothers, arising out of the following facts, which are undisputed upon the testimony taken by the auditor in the distribution of the proceeds of the sale of the personal property of Blain Brothers, upon the writ of fieri facias issued by the Union Bank of Huntingdon, which facts are fully set out in the report of the auditor.

"Blain Brothers were manufacturers engaged in the manufacture of cars at Huntingdon, Pennsylvania. In connection with this business they had several saw mills for the manufacture

of lumber. They employed a large number of laborers, ranging from 200 to 350 men.

"This firm became insolvent on the 27th of September, 1883. Some two years prior to their insolvency they inaugurated a method by which the laborers could purchase supplies and provisions from the merchants in Huntingdon.

"This method consisted of having a certificate printed, that A. B., a laborer, had so much wages due him and that it would be safe to take an assignment thereof; and underneath this certificate was a blank assignment printed.

"The firm made monthly settlements with the men employed by them. If a laborer during the month was desirous of purchasing any supplies for his family, he would go to Blain Brothers and get them to fill up a certificate of the amount of wages due him at that time; this certificate he would then take to a merchant and buy out the amount thereof and fill up the assignment of the same to the merchant who furnished the goods. Whenever Blain Brothers issued certificates of this kind, they kept a record, and at the end of the month or at the next monthly settlement day, this amount would be deducted from the month's wages, and the balance would be paid to the laborer. The merchants at the monthly settlements would appear and produce whatever certificates and assignments they held; they would then settle with Blain Brothers for the same, by taking their negotiable notes at 60 or 90 days; the certificates and assignments were delivered up at these settlements and canceled by Blain Brothers and placed in their safe or filed away, and thereby became the absolute property of Blain Brothers. In these notes were also included the account of the merchant with the firm, as well as the individual account of each member of the firm.

"This method was adopted for the convenience of the laborers, and also for the purpose of favoring trade with the merchants, Blain Brothers keeping no store or supplies for the men. The merchants all knew of this plan and certainly favored it, and acquiesced in it, from the fact that they took these certificates in exchange for goods, and for some two years or more, they regularly settled with Blain Brothers at the end of each month

and took their negotiable notes for the amounts due, including all ·other dealings they might have during the month. This method of settlement and payment by Blain Brothers of these certificates was well known to the merchants who dealt there with them. They knew that at these monthly settlements it was the custom and general course of business of Blain Brothers to require these certificates to be delivered up and canceled, and in payment thereof they would give their negotiable note, at 90 days; but if the merchant had held the certificates over one monthly settlement day, they would give their note at 60 days. All the settlements made between them and Blain Brothers during this long period, up to the last settlement before the failure, were made in this manner, without the least objection by any one of them. It was therefore clear, beyond controversy, that the agreement between Blain Brothers and the merchant dealing in this manner was that these certificates and assignments were to be paid by the negotiable note of the firm, and that the note so given was to be taken and was taken in payment of the same.

"This certainly was the general custom on this subject; it was the manner in which the business was transacted. The business having been carried on in this manner for two years without the least objection by anyone, all adopting it and acting under it, the intention of the parties is clearly shown by it. No demand was ever made by anyone for a return of these certificates until after the failure, and then it was done by certain ones, in a manner which condemns the act itself.

"These negotiable notes were an accommodation to the merchant himself; they could use them in business, while the certificates could have been of no advantage at all for this purpose. When these notes fell due, they were either paid or renewed by Blain Brothers, and discount paid by them upon the renewal. At the time of the failure a considerable number of such notes, taken in this manner, and renewed, as already stated, were held by a number of the merchants, and some of them had negotiated the notes, and they were held by third parties.

"Thus far we have stated the facts as found by the auditor, and as shown in the testimony taken by him. These facts ap-

pear in the case as undisputed in our view of the testimony. After Blain Brothers were called as witnesses, and testified to conversations and understandings and agreements made with the merchants, a number of the petitioners were called, who testified that no agreement was made in reference to taking notes, etc. It is very evident that in this testimony there is a contradiction; but it arises out of this fact, that Blain Brothers testify to an understanding or implied agreement arising out of the manner in which the business was transacted, while the several witnesses contradicting them refer to an express agreement.

"In our view of the case it is not necessary to consider the evidence where the contradiction arises. We have come to the conclusion of fact, as found in the evidence, outside of all contradiction by the witnesses. We are therefore unable to find in this case any material fact which is in dispute, which could possibly change the distribution made by the auditor. The court must judge of the materiality of the disputed fact before granting an issue.

"The court is not required to grant an issue, if the record show that it must necessarily prove unavailing. Benson's Appeal, 48 Pa. 160.

"This disposes of the second issue requested in the several petitions. We come now to consider the request for an issue as set forth in the first prayer in the petitions filed, viz.:

"Whether the delivery of the certificates and assignments and taking the notes of Blain Brothers was a waiver or extinguishment of the preference which attaches, upon insolvency, to the wages of laborers under the act of April 9, 1872. This, we hold, is a question of law for the court to decide.

"We cannot grant an issue to decide a question of law.

"We are clearly of opinion that when these certificates and assignments were delivered up and canceled, and negotiable notes given therefor at 90 days, and thereafter renewed with interest, or discount paid as shown in this case, that the preference was waived, or extinguished. It is, however, to be noted, that at the time these assignments of labor claims were canceled, there was no preference attaching to them. This preference did not attach until the insolvency of Blain Brothers. This did not occur

until September 27, 1883. At that time these surrendered orders, certificates, or assignments were delivered up and canceled and in possession of Blain Brothers, and as to them no preference could attach. They were to all intents and purposes dead, so far at least as representing a debt for wages of labor, due a laborer under the act of April 9, 1872.

"By the act of February 24, 1834, § 21 (Purdon's Digest, p. 421, ¶ 85), a preference of lien is given to servants for wages not exceeding one year, etc. This is but a transcript of a much earlier act of assembly.

"In the case of Silver v. Williams, 17 Serg. & R. 292, which was a decision under the older act, the supreme court held in the case of a decedent that a servant waived his preference of lien by taking from the decedent, in his lifetime, a single bill payable at a future day with interest. This case rules the question here, that delivering up the assignments, and taking negotiable notes at time, and renewing these with interest or discount paid, will amount to a waiver of the preference given to wages of labor under the act of 1872. The first section of the act of 1872 declares that the wages due a laborer, etc. (as in the act), shall be a lien, etc. In the third section of the act it is termed a lien of preference.

"It is apparent that both acts are analogous in principle. It was intended by the legislature to give in both a preference of lien to the persons therein enumerated. If, therefore, a servant, in the lifetime of his employer, can waive the lien, why may not the laborer, before the insolvency of his employer, under like circumstances, waive the preference given him by the act of 1872? If he can waive it before insolvency, surely his assignee may also waive it.

"We hold that the notes taken in the manner referred to, do not possess any of the distinctive qualities of a labor claim; that the preference given to wages of labor does not attach to the notes taken for the surrendered labor claims.

"It would scarcely be contended that a man holding a note containing a waiver of the usual clause of exemption, going to his debtor, and renewing the debt by taking another note for the amount, without the clause of exemption therein, then can-

celing the old note and delivering it up to his debtor, could afterwards claim that the new note had all the qualities of the old one, and that, if sued on it, the debtor could not claim the benefit of the exemption, because of the waiver contained in the old note. Yet this is in effect what is claimed for the notes taken for the labor claims. We therefore hold that the applications for issue must be refused on this ground, even though the notes might not be considered as taken in payment of the labor claims.

"One other fact appeals very strongly to our judgment. If these surrendered claims could be resurrected and allowed to participate in this distribution, it would work great injustice to the laborer whose wages it was the design of the legislature to protect. Many of these laborers continued in the employ of Blain Brothers up to the failure, and then had due them the full amount for which priority is given under the act of 1872. Some of them had more than $200, some had less.

"In all such cases a *pro rata* distribution would have to be made an dthe laborer, instead of getting the amount allowed him by law, would have to take *pro rata* with the holders of these notes. Surely such was not the design of the legislature in its enactment of April 9, 1872. These issues would have to be framed so as to give the laborer an opportunity to be heard, and instead of six or eight issues, we might multiply them by the score.

"The several issues applied for are therefore refused."

The court made the following decree: "After a full and careful examination of the testimony taken by the auditor, and the argument of counsel, we are unable to discover any error committed by the auditor, either in his findings of fact, or the law arising thereon. We agree with him fully, both as to the law and the facts.

"The distribution is made upon the only basis which preserves the right of all the creditors, laborers, merchants, and the execution creditor. To hold that the surrendered assignments, as they are designated in the auditor's report, would be revived or revivified by the subsequent insolvency of Blain Brothers, after lying for months in their safe, delivered up and canceled, and

permitting them to participate in the distribution *pro rata* with the labor claimants, under the preference allowed them by law for wages of manual labor, would be doing most manifest injustice to the rights of the laborers. The exceptions to said report are therefore overruled and the report is confirmed absolutely."

The assignments of error specified the action of the court in appointing an auditor to distribute the funds in the hands of the sheriff, the money not having been paid into court, also the action of the court in overruling the exceptions to the auditor's report in not distributing the funds to appellants, in determining the facts, and in refusing the prayers for issues

*M. M. McNeil, W. H. Woods, R. Bruce Petrikin,* for appellants.—The court, without having the money paid into court, and without ordering it to be paid in, appointed Theo. H. Cremer, Esq., auditor, to distribute the same. This action of the court constitutes the first assignment of error. The decree of the court below should be reversed, as it was error to appoint an auditor to distribute the fund when it was not in court. Kauffman's Appeal, 70 Pa. 263.

To make a second obligation a discharge of the first there must be an agreement to receive it as such. Shaw v. First Associated Reformed Presby. Church, 39 Pa. 226; Weakly v. Bell, 9 Watts, 280, 36 Am. Dec. 116; Sutton v. The Albatross, 1 Phila. 423; Jones v. Shawhan, 4 Watts & S. 262.

The taking of the notes by the several appellants was no merger. Powell v. Wyoming Valley Mfg. Co. 8 W. N. C. 293; Insurance Co. v. Smith, 3 Whart. 528; McIntyre v. Kennedy, 29 Pa. 448, 449; League v. Waring, 85 Pa. 247; McCall v. Eastwick, 2 Miles (Pa.) 45; Kinsley v. Buchanan, 5 Watts, 118.

A bill of exchange or promissory note, either of a debtor or any other person, is not payment of a precedent debt, unless it be expressly agreed. Weakly v. Bell, 9 Watts, 280, 36 Am. Dec. 116; Byles, Bills, n. top p. 370; Tams v. Hitner, 9 Pa. 448.

In cases of rent, the remedy by distress is not taken away by an action of debt for the same rent, and judgment obtained thereon, without actual satisfaction. Shetsline v. Keemle, 1

Ashm. (Pa.) 29; Bantleon v. Smith, 2 Binn. 146, 4 Am. Dec. 430.

The acceptance of a note is not a relinquishment of a mechanic's lien; additional securities are in their nature cumulative. Kinsley v. Buchanan, 5 Watts, 118; Odd Fellows Hall v. Masser, 24 Pa. 507, 64 Am. Dec. 675; Fisher v. Rush, 71 Pa. 40; Herron v. Graham, 3 W. N. C. 176; Jones v. Shawhan, 4 Watts & S. 258; Crean v. McFee, 2 Miles (Pa.) 214; McCall v. Eastwick, 2 Miles (Pa.) 45; Powell v. Wyoming Valley Mfg. Co. 8 W. N. C. 293; Philadelphia Trust Co's Appeal, 2 W. N. C. 594.

As the demand for the issue was in time, and the nature of the material facts explicitly set forth, and material if true, we think the court erred in refusing it. The act of assembly is quite imperative, as many decisions show, that the court under such a statement of the case must grant an issue. Section 2 of the act of April 20, 1846; Benson's Appeal, 48 Pa. 160.

If there is any evidence on the part of the appellees that the notes and checks were in satisfaction or extinguishment of the pre-existing debts, or claims for wages and right of preference under the act of April 9, 1872, and its supplements, then it is a matter of fact for the jury, and it is error in the court to decide it as a matter of law. Dormer v. Brown, 72 Pa. 408; Stone v. Miller, 16 Pa. 456; Weakly v. Bell, 9 Watts, 280, 36 Am. Dec. 116; Leas v. James, 10 Serg. & R. 315; Jones v. Johnson, 3 Watts & S. 278, 38 Am. Dec. 760; Hart v. Boller, 15 Serg. & R. 162, 16 Am. Dec. 536; Mason v. Wickersham, 4 Watts & S. 100; Brown v. Scott, 51 Pa. 363; Jones v. Shawhan, 4 Watts & S. 263; Tams v. Hitner, 9 Pa. 448; Eby v. Hoopes, 1 Pennyp. 177.

*K. A. Lovell* and *R. M. Speer* for the Union Bank, appellee.

Per Curiam:

These six appeals were argued together. They are from the same decree and present the same question. The auditor and court concur in the finding of all the controlling facts.

On those facts, the opinion of the learned judge contains a

clear and correct statement of the law applicable thereto. There was no error in refusing the application for an issue when, under the facts not disproved, the law will not sustain the claims made by the appellants to be preferred in the distribution of the fund.

Decree in each case affirmed and the several appeals dismissed, at the costs of the respective appellants therein.